P. L. NICHOL AND WIFE v. A. C. NICHOL, et al.

1. STATEMENT. P. L. Nichol, on April 2, 1870, for love and affection, conveyed the real estate in litigation to his wife, Sue M. Nichol, upon the following trusts and conditions, to-wit : "for her sole and separate use during the joint lives of the said Sue M. and myself; but if I survive her (the said Sue M.) then the property herein conveyed and given, to be vested in me, the survivor, my heirs and assigns forever. In case of my death before said Sue M., then, and in that event, to her, the said Sue M., for life, with remainder to the children born of the marriage of said Sue M. and myself, or the representatives of such of our children as may be dead, and such interest as my daughters may receive and take under this trust, is given and conveyed to them, to their sole and separate use, free from the debts, liabilities and contracts of their husbands, or of any husbands each may have; and said Sue M. is hereby empowered to sell, lease, mortgage, exchange, rent or otherwise dispose of the property herein given and conveyed, and whenever any of the property herein mentioned is sold and disposed of, the proceeds are to be invested to the same trusts, and held as aforesaid." On May 4th, 1872, P. L. Nichol and wife entered into a written contract, which was duly signed and acknowledged, with A. C. Nichol, in which it was agreed that they would sell and convey to him, the said A. C. Nichol, said property, in consideration of 'which he agreed to pay $15,000, $8,500 in cash, and the balance to be secured by two notes, the cash and notes to be placed in the 4th National Bank, "subject to such claims as are now a lien upon the property." The liens on the property were as follows: on July 23, 1870, P. L. Nichol and wife joined in a deed of trust upon part of the property to P. Lindsley, to secure a debt of P. L. Nichol to Trabue, executor of the estate of Joseph Woods. On September 21, 1870, said Nichol and wife again joined in a deed of trust conveying another part of the property to W. J. Arrington, to secure a debt of $600 due from P. L. Nichol to Samuel Bugg. On February 13, 1872, they again conveyed the property to P. Lindsley, in trust, to secure B. Nichol, as accommodation endorser on a note for $8,098 39, executed by P. L. Nichol for a debt due from him to Davidson County. P. L. Nichol and wife filed their bill against A. C. Nichol to compel a specific performance of the aforesaid contract, and joined with him as defendant,

10—VOL. 4.

the 4th National Bank. Afterwards they filed an amended bill, making the parties claiming under the several deeds of trust, the County of Davidson, and the minor children of P. L. and Sue M. defendants, and charging that a specific performance, as prayed in the original bill, would be manifestly to the interest of all concerned. Lindsley, trustee, and B. Nichol, filed their answers as a cross-bill, praying for a specific performance, or, if this cannot be had, then, that their rights under their deeds of trust be enforced, and for general relief. The County of Davidson files its bill, charging that the deed of gift from P. L. to his wife was fraudulent, and made to hinder and delay creditors, and, consequently, that it has the right to go behind all the trust conveyances, and have the deed of gift set aside, and the property held subject to its debts. A. C. Nichol resists the prayer of the bill to compel him to specifically perform the contract, and alleges, and his allegations are sustained by the proof, that a few days after the execution of the contract, he was apprised of the trusts upon which the conveyance was made to Mrs. Nichol, a fact that was not disclosed by P. L. Nichol, with whom alone he negotiated, and that as soon as he made this discovery he offered to rescind the contract, which was refused; and he charges, that, by reason of such trusts in the conveyance to Mrs. Nichol, they could not convey to him a good title.

*Held:* NOTICE. *Effect of registration. Duty of vendor.* A vendor asking a specific performance, cannot excuse himself for not disclosing to his vendee, defects in his title, by saying that these defects might have been discovered by examination of the records in the Register's office, and, therefore, the fact that the deed of gift was recorded, did not affect the vendee with notice, it being the duty of the vendor to fully disclose the nature and condition of his title.

2. EXECUTORY CONTRACT. *Defects in title.* It is an unquestioned rule of law, that, so long as a contract for the sale of land remains executory, the purchaser is not bound to proceed to execute it, when it appears by reason of defects not previously disclosed to him, the vendee cannot make a title free from doubt.

3. DOUBTFUL TITLE. *Rights of the purchaser.* A vendee cannot be compelled to execute such a contract, where it is *doubtful* whether the vendor can make him a good title. It is, therefore, held, that, it being a doubtful question, whether, under the deed of gift the vendee could acquire a perfect title, he could not be compelled to specifically execute his contract.

4. VENDOR CANNOT AVOID ONE DEED TO MAKE ANOTHER GOOD. A vendor cannot, for the purpose of conveying to his vendee a good title, avoid a deed which he himself has previously executed, the existence of which

Nichol v. Nichol.

casts a doubt upon the validity of the title sought to be communicated to the vendee, by charging that it was fraudulent, made for the purpose of hindering and delaying creditors.

5. VENDEE REQUIRED TO ACCEPT, IF GOOD TITLE CAN BE MADE ON FINAL HEARING. *Title must not be different from what was contracted for.* In a case where there is no fraud or concealment, if the vendor be able to make a clear title upon final hearing, the purchaser will be required to accept it; but, where, as in the present case, it would require a sale of the property under a decree of the Court, to communicate a good title, the purchaser is not bound to accept it, because this would be such a title as he had not bargained for.

6. ACCEPTANCE OF NOTE. *Estoppel.* A creditor who accepts a note for his debt, is not estopped from filing a bill to set aside a conveyance, previously made in fraud of his rights. ·

7. PRACTICE. *Answer filed as cross-bill.* The Statute allowing an answer to be filed as a cross-bill, does not limit it to purposes of defence, but puts it upon the same footing as a cross-bill proper.

8. POWER TO MORTGAGE CONSTRUED. It is held, that the power in the deed to the wife to mortgage the property, must be construed to mean that any mortgage executed, must be for the purpose of carrying out the trusts mentioned therein, and not to secure the husband's outside indebtedness.

9. VOID DEED. *Subsequent creditors.* A deed void as to existing creditors, is void, also, as to subsequent creditors.

Cases cited: Kennedy v. Woodfolk, 3 Hay., 195; Buchanan v. Alwell, 8 Hum., 516; Cunningham v. Sharp, 11 Hum., 116; Pipkin v. James, 1 Hum., 325; Galloway & Pillow v. Hugh Bradshaw, 5 Sneed, 70; Williams v. Lowe, 4 Hum., 62; Wade, et als. v. Green, et als., 3 Hum., 547: Maley v. Barrett, 2 Sneed, 501; Campbell v. Fields, 1 Cold., 416.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court. E. H. EAST, Chancellor.

ED. BAXTER for A. C. Nichol.

DEMOSS & MALONE for P. L. Nichol.

MCFARLAND, J., delivered the opinion of the Court.

The original bill was filed by P. L. Nichol and wife, to compel the defendant, A. C. Nichol, to specifically perform a contract entered into in writing, between them on the 4th of May, 1872. By this contract, said P. L. Nichol and wife agreed to sell to said A. C. Nichol, two lots in Nashville, constituting one property. A. C. Nichol agreeing to pay therefor, $15,000; $8,500 in cash, and to secure the balance by two notes, the cash and notes to be placed in the Fourth National Bank, "subject to such claims, as are now a lien upon the property."

This contract was acknowledged by the parties in due form, and registered, but the defendant, A. C. Nichol, soon after, (within a day or two) declined to execute the agreement, upon the ground, that the complainants were not in a condition to make a title free from doubt, and he files his answer as a cross-bill for a recision.

P. L. Nichol was the owner of the property in the first instance. On the 2nd of April, 1870, he made a deed of gift, conveying this, with other property, to his wife, Sue M. Nichol; the particular terms of this deed will hereafter be noticed. Afterwards, on the 23d of July, 1870, said P. L. Nichol and wife joined in a deed of trust upon part of the property to P. Lindsley, to secure a debt of P. L. Nichol's to Trabue, executor of the estate of Joseph Woods. On the 21st of September, 1870, said Nichol and wife again joined in a deed of trust, conveying another part of the property to W. J. Arrington, to secure a debt of $600, due from P. L. Nichol to Samuel Bugg.

On the 13th February, 1872, said Nichol and wife again conveyed the property in controversy, to Philip Lindsley, in trust, to secure Bradford Nichol, as endorser of a note for $8,098 39, that day endorsed for the accommodation of P. L. Nichol, being the amount due from him to the County of Davidson. These conveyances were all registered.

By the original bill, A. C. Nichol and the Fourth National Bank, only, were made defendants; but by a second amended bill, the parties claiming under the several deeds of trust, as well as the County of Davidson, and the minor children are made defendants; and it is charged, that a specific performance of the sale to A. C. Nichol, would be manifestly to the interest of all concerned. Philip Lindsley, as trustee for Woods, Executor, and Bradford Nichol, filed their answer as a cross-bill, praying that the defendant, A. C. Nichol, be compelled to perform the contract, so that their debts be paid; or, if this cannot be done, that their rights under their deeds of trust be enforced, and for general relief. The County of Davidson files its bill, charging that the deed of gift from P. L. Nichol to his wife, was fraudulent, and made to hinder and delay creditors, and consequently, it has the right to go behind all the conveyances, and have the deed, aforesaid, set aside, and held subject to its debts.

The first question arises between the complainants in the original bill and the defendant, A. C. Nichol, as to the right to a specific performance. It suf-

ficiently appears, that A. C. Nichol had notice before he finally executed the contract for the purchase of the property, of the liens upon it, but it does not appear that he knew of the precise nature of those liens. His contract shows, that his cash payment and notes were to be deposited in bank, to discharge these incumbrances. So that their existence was no objection upon his part, to the execution of the contract. But it appears, by the decided weight of testimony, that he did not have actual notice of the existence of the deed of gift from P. L. Nichol to his wife. His own testimony on this point, is positive and direct, and he is strongly corroborated. The contract, as first drawn up and executed, was alone between P. L. Nichol and A. C. Nichol; the name of Mrs. Sue M. Nichol, the wife of P. L., was afterwards, by consent, introduced, and she then signed and acknowledged the contract. A. C. Nichol testifies, that, when he consented to this, he did so upon the supposition that her assent to the sale was necessary to bar her right to dower, but was not informed of the deed of gift until afterwards. The testimony of P. L. Nichol goes to show that he acted under the impression that A. C. Nichol was informed of the existence of the deed of gift, but we do not understand him to say, distinctly, that he informed A. C. Nichol of its existence.

A. C. Nichol's testimony being positive, besides, as we have said, being corroborated, must be taken as true.

The negotiations were all with P. L. Nichol, and

none with Mrs. Nichol.     It was the duty of P. L. Nichol to fully disclose the nature and condition of the title, and to give A. C. Nichol notice of the existence of the deed of gift.     As between them, and for the purpose we are now considering, the registration of the deed was not notice to A. C. Nichol.     A vendor, asking a specific performance, cannot excuse himself for not disclosing to his vendee defects in his title, by saying that these defects might have been discovered by examination of the Register's office.     We have so held in an unreported case.

Upon discovering the existence of the deed of gift upon the Register's books within a few days, A. C. Nichol declined to perform the contract, but offered to rescind.     He gave the existence of this deed as his reason for declining to proceed, and we think he did not resort to it as a mere pretext to avoid the contract, because he had, for other reasons, become dissatisfied with it.

It is an unquestioned rule, that, so long as the contract remains *executory*, the purchaser is not bound to proceed to execute it, when it appears, that, by reason of defects not previously disclosed to him, the vendee cannot make a title free from doubt; 11 Hum., 116; 8 Hum., 516; 1 Hum., 325; 5 Sneed, 70.

The question then is, did the existence of the deed of gift referred to constitute an obstacle in the way of a perfect title being made by P. L. Nichol and wife.

The deed of gift was, as we have said, made by

P. L. Nichol, and conveys, in consideration of love and affection, the property to his wife, Sue M. Nichol, " to have and to hold the same to the said Sue M. Nichol, upon the following trusts and conditions: for her sole and separate use during the joint lives of the said Sue M. and myself; but if I survive her (the said Sue M.) then the property herein conveyed and given, to be vested in me, the survivor, my heirs and assigns forever. In case of my death before said Sue M., then, and in that event, to her, the said Sue M., for life, with remainder to the children born of the marriage of said Sue M. and myself, or the representatives of such of our children as may be dead, and such interest as my daughters may receive and take under this trust, is given and conveyed to them, to their sole and separate use, free from the debts, liabilities and contracts of their husbands, or of any husbands each may have; and said Sue M. is hereby empowered to sell, lease, mortgage, exchange, rent or otherwise dispose of the property herein given and conveyed, and whenever any of the property herein mentioned, is sold and disposed of, the proceeds are to be invested to the same trusts, and held as aforesaid."

At the time of the contract in question, the complainants had four children, all of whom were minors. Had P. L. Nichol and wife the power to make to A. C. Nichol an undoubted title to the property, in view of the existence of the above deed?

The deed contains an express power to said Sue M., the wife, to sell or otherwise dispose of the prop-

Nichol *v.* Nichol.

erty; but this is coupled with a provision, that, "when any of the property is sold and disposed of, the proceeds are to be invested to the same trusts, and held as aforesaid." This, as we have seen, was to the sole use of said Sue M., during their joint lives, and in the event the said P. L. Nichol should not be the survivor, then the remainder to their children. This, we think, certainly gave the children a contingent remainder interest in the property. But this might be cut off, provided a sale be made in pursuance to the power given in the deed. Was the contract sought to be enforced, a sale in pursuance of this power in the deed? The sale was negotiated by P. L. Nichol, not for the purpose of a reinvestment to the same trusts, but first to pay off the incumbrances created by the mortgage or deeds of trust, and next, for the purpose of using the surplus in his private business, as he proves himself, and we do not understand that this would have been a reinvestment upon the same trusts as the deed of gift. Might not this be held, at the instance of the minors, a breach of trust, and would A. C. Nichol have been safe with a full knowledge of the purpose for which this sale was being made, to have gone on with its execution? See Fry on Specific Performance, §247; *Campbell* v. *Fields, et als.,* 1 Cold., 416. We do not deem it necessary or proper, to decide definitely, that such title would have been bad, but we are of opinion that A. C. Nichol was not bound to accept this title. He did not contract for it, was not informed of it, and, to say the least, it

was not so free from doubt that a Court of Equity, under these facts, would compel him to accept it, particularly as the offer to rescind was made at once, the defendant not having taken possession of the property, and there being no difficulty in placing the parties in *statu quo*. So, if there be nothing else in the case, the prayer for specific performance must be refused.

In the view we have taken, it is unnecessary to determine whether Mrs. Nichol could bind herself by an executory contract; 2 Cold., 638.

But the complainants file an amended bill, in which they charge, in substance, that, at the date of the execution of the deed of gift, the said P. L. Nichol was largely indebted to the County of Davidson, and that the deed conveyed all his land, leaving him but a comparatively small amount of personalty, upon which they assume that the deed, being voluntary, was void, and that neither the wife or children acquired any right under it, and P. L. Nichol had the right to disregard it.

The minor children are brought before the Court. We presume that it cannot be successfully maintained, that the complainants are in any better attitude upon the allegations of this amended bill. Nothing is better settled than, that a deed made to hinder and delay creditors, while voidable at the instance of the creditors so hindered and delayed, is still binding, to all intents and purpose, between the parties and all others—such is almost the literal language of the Statute of Frauds upon this subject. So that the complain-

ant, Nichol, cannot avoid his deed upon this ground. The County might do so,. but unless it, or some other creditor did so, the deed would be valid and binding.

Had A. C. Nichol gone on to execute the contract, the debts would have been paid and satisfied, and, consequently, no party would have been in a condition to have avoided the deed of gift for fraud. The debts being thus out of the way, and the deed of gift being valid between the parties, A. C. Nichol would have stood alone upon this title; and if his title were attacked by the minor children of P. L. Nichol, claiming under the deed of gift, it would be no sufficient answer for him, to reply, that the deed of gift was made to defraud the County of Davidson; *Williams* v. *Lowe,* 4 Hum., 62; *Wade, et als.* v. *Green, et als.,* 3 Hum., 547; *Maley* v. *Barrett,* 2 Sneed, 501.

It is next mentioned, that, even if the complainants were not in a condition to make an indisputable title, still, as all the parties claiming, or having any interest or rights in the property are now before the Court, and are willing and desirous that the sale to the defendant be confirmed, and he required to take the property at the price agreed to be given by him; that an undoubted title can now be made, by the decree of the Court.

It is true, that, in a case where there was no fraud or concealment, if the vendor be able to make a clear title upon final hearing, the purchaser will be required to accept it; this, principally, in cases where the vendee has gone into possession and retained it.

*Kennedy* v. *Woodfolk*, 3 Hay., 195. See, also, *Buchanan* v. *Alwell*, 8 Hum., 516.

But the complainants are not now able to make the defendant a title free from doubt. It is true, that, if the case of the County of Davidson be sustained, and the deed of gift declared void, a sale made under a decree in the cause, would, so far as appears, communicate a good title. But this would be a contract entirely different from the one made by the parties. The defendant was not bound to purchase the property at this sale.

The prosecution of this latter case is under the control of the County, and has no necessary connection with the other causes. The County could dismiss its suit at any time.

Upon this part of the case, we regard the fact, that, A. C. Nichol made his objection to proceeding with the contract, and offered to rescind immediately after discovering the facts, which was within a day or two after the contract was made, before he had taken possession, as an important consideration. A rescission then would have placed the parties in *statu quo*, and no material injury would have been inflicted upon the complainants, at least none of which they could rightfully complain.

We think the decree of the Chancellor refusing a specific performance and granting a rescision, is correct, and it will be affirmed.

Passing to the consideration of the cause of the County, we think no successful resistance can be made

to the prayer of the bill. P. L. Nichol and wife, in substance, admit that the deed of gift was fraudulent, as to the County, and, although this admission cannot affect the minors, yet the allegation is conclusively established by the fact that the deed was voluntary, and conveyed all the vendor's realty, leaving only personalty, of the value of $1,500, he being at the time indebted about $11,000, and, besides, there is evidence of an actual intent to hinder and delay the County.

The County is not estopped from charging this fraud, by having subsequently accepted a note, with personal security, for the debt. Nor is the County estopped by its action in regard to the deed of trust made for the benefit of Bradford Nichol, the endorser of the note to the County. This deed was made expressly for the benefit of said Bradford Nichol; it refers to the deed of gift, and may be taken as made in pursuance of the power in said deed, while the County Judge may have looked to the advantages to result to the County from this deed, the County was not a party, or bound by it. The parties claiming under the first two deeds of trust, cannot have a lien superior to the County, upon the ground that they are innocent purchasers, they are not in that attitude.

The decree, therefore, in favor of the County, is correct, and will be confirmed.

The question then arises as to the effect of the deeds of trust before referred to, in the event there be a surplus, after paying the debt of the County.

This is of no practical importance as to Bradford Nichol, as the payment of the County debt releases him; but as to the other two, the question is material.

The deed of gift being valid, as to every one but creditors, and the County being satisfied, the surplus would pass under the deeds of trust, provided the deeds of trust were sufficient to pass the title as to Mrs. Nichol and her children. The deed of gift contains an express power to mortgage, and it is claimed, that, under this power, the deeds of trust are valid, as to the surplus, after satisfying the debts of the County.

The Chancellor held, that, under our Statute allowing an answer to be filed as a cross-bill, an answer can only be filed as a cross-bill for the purposes of defence, and the dismissal of the complainants's bill necessarily carried with it the cross-bills seeking specific relief, not defensive. The cross-bills of Lindsley, Trustee, were, therefore, dismissed, without prejudice.

We have not been favored with the opinion of the learned Chancellor on this point, nor with the reasons upon which this conclusion is based. So far as we see, it does not appear to us that the Statute, allowing an answer to be filed as a cross-bill, intended to place such cross-bill upon any different footing, in this respect, from a cross-bill proper. Nor do we perceive reasons sufficiently strong to authorize us to adopt this construction; it would, perhaps, be the more convenient practice; yet it is not impracticable to use the same

papers for the purpose of both an answer and a cross-bill seeking independent relief.

Upon this question we differ with the Chancellor, and hold, that the question made by the Trustee, Lindsley, under the cross-bill, should have been heard and determined.

These deeds of trust purport to be founded upon the deed of gift which is expressly referred to, it is probable, therefore, that they were intended to be executed in pursuance of the power contained in the deed of gift. The question first, is, does the deed of gift contain any power to execute the deeds of trust in question. It is argued with great plausibility, that the deed should be construed to authorize a mortgage or sale to secure the debt of the County, otherwise, it would be in the power of the County to defeat the entire trust. That Mrs. Nichol must be held to have the power to secure or pay off a debt, which, if not paid or secured, would take all the property, and that this is the meaning of the language giving the power to sell or mortgage.

If we assume that the debt of the County would not be otherwise paid, and the deed of gift being fraudulent, there might be force in the argument; but as we have said, the decree in favor of the County, renders this question unimportant, practically.

The question is, does the deed of gift contain a power to Mrs. Nichol to mortgage the property for the subsequent debts of her husband, P. L. Nichol, for such we understand to be the character of the

debts of Trabue and Bugg. The deed, as we have seen, conveys the property to the sole use of Mrs. Nichol during their joint lives, and in the event P. L. Nichol is not the survivor, remainder to their children. And Mrs. Nichol is empowered " to sell, lease, mortgage, exchange, or otherwise dispose of" the property; and when any of the property is sold and disposed of, the proceeds are to be invested, to the same trust, and held as aforesaid.

It is argued, that, conceding that when she sold the property it must be for reinvestment, the power to mortgage is not thus restricted, and, therefore, she might mortgage to raise money for her husband, or secure his subsequent debt. It is the settled rule, that, where property is settled to the separate use of a married woman, her power of disposition is limited to a disposition in the mode even for the purpose specified in the power; *Campbell* v. *Fields*, 1 Cold., 416. Now, the primary purpose of the present conveyance was to secure the property to the separate use of Mrs. Nichol, the proceeds in case of sale, was to be reinvested upon like trusts; but she was given the power to lease or mortgage, for what purpose? To secure the debts of the husband? If so, it would most likely defeat the entire objects of the settlement. We think, if such a power as this be claimed, that it ought to be clearly expressed, that it would be more reasonable to construe this power to mortgage, to mean a power to mortgage for the purpose of carrying out the objects of the settlement, and not to defeat it,

and, therefore, we think this deed of gift does not contain a power to mortgage to secure the subsequent debt of the husband.

It is next argued, that, at any rate, the deed of trust in question would, at least, convey the title of Mrs. Nichol and her husband, that it conveys the property subject to the contingent interest of the children, but upon the authorities, a married woman in such cases, has no more power to convey against herself than any one else. Unless she convey in pursuance of a power she cannot convey at all.

It is true, under the terms of the deed, in the event P. L. Nichol survive his wife, he would again become the absolute owner of the property, and we suppose that this title of his, passed by creation of the deed of trust, but this contingent interest would not be available surety to his creditors.

The question remaining, is, whether Trabue, ex'r, and Bugg, may reach the surplus after paying the debt of the County, upon the ground that a deed void for fraud as to existing creditors, is void, also, as to subsequent creditors; there is no doubt of this principle. By a liberal construction, the cross-bill is so framed as to embrace this relief, and we think the parties are not estopped from claiming their relief. It is true, as a general rule, a party cannot claim under a deed as valid and against it as fraudulent. There was no fraud in the deeds of trust under which Trabue and Bugg claim. We think they should not be precluded from claiming the benefits of the decree de-

claring the deed of gift void, for fraud, and this reaches the justice and merits of the case.

The decree, as to the cross-bill of Lindsley, trustee, will be reversed, and a decree entered according to this opinion. The costs of this Court will be paid out of the proceeds of the sale of the property.